UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-23589-CIV-KING/MCALILEY

FELICE ABBY,

       Plaintiff,

v.

ROBERT PAIGE, and WINDY POINTE
HOMEOWNERS ASSOCIATION, INC.,

       Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Defendant Windy Pointe Homeowners Association, Inc.'s Motion for Summary Judgment (DE #234) and Defendant Robert Paige's Renewed and Supplemental Motion for Summary Judgment (DE #235), both filed April 2, 2012. Therein, Defendants seek summary judgment on the issues of whether the balance owed by Plaintiff Abby is a consumer debt under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Florida Consumer Collection Practices Act ("FCCPA"), FLA. STAT. § 559.55 *et seq.*, whether Defendant Robert Paige qualifies as a "debt collector" under the FDCPA, and whether Plaintiff Abby has provided sufficient evidence in support of her claim for slander of

title. The Court is fully briefed on the matter.[1] Upon careful consideration of the Parties' arguments as set forth in their pleadings, the Court finds that Defendants' Motions for Summary Judgment should be denied.

## I. Background

On October 6, 2010, Plaintiff Felice Abby ("Abby"), a homeowner in the Windy Pointe residential complex, filed a Complaint in above-styled action, claiming that Defendant Windy Pointe and Defendant Paige, Windy Pointe's attorney, made unlawful attempts to collect the balance of her assessment account and improperly placed a lien on her house. (DE #1). Specifically, Abby alleges violations of the FDCPA against Defendant Paige and violations of the FCCPA against Defendant Paige and Defendant Windy Pointe. Plaintiff Abby also alleges slander of title against both Defendants based on a lien that was placed on her property. The following facts are uncontested. (Def. Windy Pointe's Statement of Material Facts, DE #233; Def. Paige's Statement of Material Facts DE #236; Pl's Opp. to Statement of Material Facts, DE #253).

Plaintiff Abby resides and owns a home in the Windy Pointe residential complex. (DE #1, ¶15; DE #21-1). Plaintiff Abby is a member of the Windy Pointe Homeowner's Association, Inc. and subject to the Declaration of Restrictions and Covenants for Windy Pointe, as amended and restated, by virtue of her ownership of property in the Windy Pointe residential community. (DE #13-2, at 33–38; Abby Dep. 19:22–20:23, DE #183-1). Pursuant to the Declaration, assessments are timely due and payable to Windy Pointe

---

[1] Plaintiff Abby filed a Response to Defendant Windy Pointe's Motion (DE #254) on April 19, 2012, and Defendant Windy Pointe filed a Reply (DE #260) on April 30, 2012. Plaintiff Abby also filed a Response to Defendant Paige's Motion (DE #272) on May 31, 2012.

together with applicable interest, late fees, costs, and reasonable attorney's fees. (Abby Dep. 26:6–28:18, DE #183-1).

On October 6, 2009, Plaintiff Abby received a letter from Defendant Paige on behalf of Defendant Windy Pointe, demanding $572.20 for the November 2009 assessment of $77.20, alleged "past due maintenance and other charges," and $150.00 in attorney's fees. (DE #1-4). The letter also stated that if Plaintiff Abby did not pay the $572.20 within 45 days that "the Association has instructed me to file a Lien against your property, which could result in the loss of your property if you continue to fail to make payment." (*Id.*). On November 1, 2009, Plaintiff Abby submitted a check in the amount of $77.20. (DE #1-5; DE #1-6).

Then, on November 9, 2009, Plaintiff Abby received a letter from Defendant Paige on behalf of Defendant Windy Pointe, confirming that Defendant Paige had received the check for $77.20, and demanding a payment of $500.00 no later than November 21, 2009. (DE #1-5). Again, Defendant Paige indicated that he would record a Lien against Plaintiff Abby's property if she did not submit payment in a timely manner. (*Id.*).

At that time, Plaintiff Abby communicated with her brother, Thomas Abinanti, Esq., regarding the monies claimed due to Windy Pointe. (Abby Dep. 33:11–16, DE #183-1). Mr. Abinanti is an attorney licensed to practice law in the state and federal courts of New York and Connecticut, as well as the United States Court of Appeals for the Second Circuit. (DE #183-2, at 1). Mr. Abinanti is not licensed to practice law in Florida. (Id.). Mr. Abinanti did not submit any invoices or billing statements to Plaintiff

Abby for professional legal services related to the above-styled action. (Abby Dep. 35:8–37:9, 132:1–6, DE #183-1).  Plaintiff Abby does not dispute that she has not paid Mr. Abinanti for any professional legal services related to the above-styled action. (*Id.*).

On November 20, 2009, Mr. Abinanti sent a letter to Defendant Paige, inquiring about the assessment charges and letters sent by Defendant Paige to Plaintiff Abby. (DE #1-7). Shortly thereafter, Plaintiff Paige sent a fax to Mr. Abinanti, stating that Plaintiff Abby still owed a sum of $500.00, but that "Mr. Paige will deduct $100.00 from this total if [Plaintiff Abby] comes to our office with clear funds by 12 noon tomorrow." (DE #1-8). After a discussion with Mr. Abinanti, Plaintiff Abby issued a check to the Robert E. Paige Trust Account in the amount of $400.00 on November 24, 2009. (DE #1-9; DE #183-4). Plaintiff Abby wrote the words "UNDER PROTEST" on the check she submitted to Defendant Paige. (DE #183-4). Plaintiff Abby also issued a check in the amount of $77.20 on November 27, 2009. (DE #1-11).

On December 14, 2009, Plaintiff Abby received another letter from Defendant Paige on behalf of Defendant Windy Pointe, demanding a payment of "$449.70, for the total of the past due maintenance and other charges described on the enclosed statement (less $250.00 payment), the January $77.20 assessment, and a $150.00 attorneys fee." (DE #1-10). This letter also indicated that Defendant Paige would place a Lien against Plaintiff Abby's property if she did not pay the $449.70 within 45 days. (Id.). Defendant Paige copied "Thomas Abinanti, Esq." on the December 14, 2009 letter. (Id.).

The next day, on December 15, 2009, Plaintiff Abby received a letter from Defendant Paige on behalf of Defendant Windy Pointe, confirming that Defendant Paige

had received the check for $77.20, dated November 27, 2009, and demanding "payment in the amount of $372.50 by no later than January 29, 2009 [sic]." (DE #1-11). Again, Defendant Paige indicated that he would record a Lien against Plaintiff Abby's property if she did not submit payment in a timely manner. (*Id.*).

On January 28, 2010, Plaintiff Abby filed a *pro se* state court action against Defendants Paige and Windy Pointe seeking to recover $400.00. (DE #13-1). Plaintiff Abby's costs for filing the state court action included a filing fee of $125.00 and costs of $25.00, for a total of $150.00. (Pl's Supplemental Answers to Def's First Set on Interrogatories #1–4, 6&7, DE #183-5, at 9).

On April 27, 2010, Defendant Paige sent Plaintiff Abby a letter, alerting her that he had recorded a lien against her Property in the amount of $1,095.00, to include the $195.00 balance reflected on her Resident Transaction Report, $850.00 in attorney's fees, and $50.00 in costs. (DE #1-12). The letter demanded payment in the amount of $1,181.65, to include the $1,095.00, along with the May 2010 assessment of $86.65. (*Id.*).

On June 5, 2010, Plaintiff Abby issued a check to the Robert E. Paige Trust Account in the amount of $1,095.00, which resulted in the removal of the lien on her Property on July 12, 2010. (DE #183-6). Plaintiff Abby again wrote the words "UNDER PROTEST" on the check she submitted to Defendant Paige. (DE #183-6). On October 15, 2010, Plaintiff Abby voluntarily dismissed her state court action against Defendants Paige and Windy Pointe. (Abby Dep. 52:11–17, DE #183-1).

On October 6, 2010, Plaintiff Abby, through her newly-retained local counsel, filed the instant action, alleging violations of the FDCPA against Defendant Paige (Count I), as well as violations of the FCCPA (Count II) and Slander of Title (Count III) against Defendant Paige and Defendant Windy Pointe. (Compl., DE #1). Before the Court now are Defendants' Motions for Summary Judgment on all counts.

## II. Legal Standard

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24.

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

### III. Analysis

With the instant Motions, Defendant Paige and Defendant Windy Pointe seek summary judgment on all counts. Specifically, Defendants argue that the balance owed does not qualify as a "consumer debt" under the FDCPA and the FCCPA, that Defendant Paige is not a "debt collector" under the FDCPA, and that Plaintiff Abby has presented insufficient evidence of slander of title. Upon careful consideration of the Parties' arguments, the uncontested evidence in the record, and the relevant authority, the Court finds that it must deny Defendants' Motions for Summary Judgment.

### A. *The Balance of Plaintiff Abby's Assessment Account Qualifies As a "Debt" Under the FDCPA and the FCCPA*

The FDCPA and the FCCPA are designed *inter alia* to eliminate abusive practices in consumer debt collection. Specially, the statutes prohibit certain collection practices of

consumer debts. Both statutes define "consumer debt" identically as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . ." FLA. STAT. § 559.55(1); 15 U.S.C. § 1692(5). Although the FDCPA does not define "transaction," the Eleventh Circuit has explained that "[t]he ordinary meaning of 'transaction' necessarily implies some type of business dealing between parties." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998). Courts generally analyze whether an amount due qualifies as a "debt" under the Acts in the same manner. *See generally Wright v. Bush Ross, P.A.*, Case No. 8:07-cv-1885-T-23MAP, 2008 WL 190466, at *2 (M.D. Fla. Jan. 18, 2008) (looking to federal courts' interpretations of a "debt" under the FDCPA to determine what qualifies as a "debt" under the FCCPA).

Here, Defendants advance the frivolous argument that past-due homeowner's assessments do not qualify as a "debt" under the FDCPA and the FCCPA. As acknowledged by Defendants in the instant motions, this Court has already rejected this very argument in its Order Denying Defendants' Motion to Dismiss. (DE #27).

Alternatively, Defendants argue that the remaining balance on Plaintiff Abby's assessment account was late fees, which are not considered "debts" under the FDCPA and the FCCPA, as opposed to past-due homeowner's assessments. *See, e.g., Durso v. Summer Brook Preserve Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1265 (M.D. Fla. 2008) (finding that late fees levied as penalties do not qualify as debts under the FDCPA). The Court has reviewed the evidence in the record, including a letter sent by Defendant Paige on behalf of Defendant Windy Pointe demanding Plaintiff Abby pay

"the sum of $572.20, for the total of the past due maintenance and other charges described on the enclosed statement." (DE #232-3, at 1). The "enclosed statement" referred to in the letter is also part of the record. It provides an accounting of the charged assessments and Plaintiff Abby's payments, as well as the application of late fees in $25.00 increments and administrative collection fees in $5.00 increments. *Id.* at 2. This accounting reveals that, at all relevant times, the balance owed by Plaintiff Abby included past-due assessments and administrative collection fees. Accordingly, the Court finds that the balance of Plaintiff Abby's account qualifies as a "debt" under the FDCPA and the FCCPA.[2] *See generally Brown v. Budget Rent-A-Car Systems, Inc.*, 119 F.3d 922, 925 (11th Cir. 1997) (holding administrative fees fall within the FDCPA).

## B. *There Is Sufficient Record Evidence to Support a Finding that Defendant Paige Is a "Debt Collector" Under the FDCPA*

In the Motion for Summary Judgment, Defendant Paige advances four arguments as to why he does not qualify as a "debt collector" under the FDCPA: (1) the homeowner's assessments were not in default; (2) Defendant Paige obtained Plaintiff Abby's account prior to any default; (3) Defendant Paige was an agent of Defendant Windy Pointe; and (4) Defendant Paige was enforcing a security interest in the form of an unperfected lien. The Court will address each argument in turn.

---

[2]    The Court also notes that Defendants' argument that Plaintiff Abby's monthly payments were applied to her past-due assessment balance and not to her late fees is contrary to Florida law. Pursuant to Florida Statute, "any payment received by an association and accepted shall be applied *first* to any interest accrued, *then* to any administrative late fee, *then* to any costs and reasonable attorney's fees incurred in collection, and *then* to the delinquent assessment." FLA. STAT. § 720.3085(3)(b) (emphasis added). Assuming Defendants complied with the Florida Statute, Plaintiff Abby's monthly payments were applied to the late fees and administrative collection fees first and then to the past-due assessment balance. As such, the balance of Plaintiff Abby's account would continue to include the past-due assessments.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA expressly excludes from the term "debt collector" "any person collecting or attempting to collect any debt . . . [that] is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement . . . [or] a debt which was not in default at the time it was obtained by such person." 15 U.S.C. §1692a(6)(F).

With regard to first argument, Defendant Paige relies upon Defendant Windy Pointe's failure to designate Plaintiff Abby's account in default under its bylaws, as well as on Plaintiff Abby's allegations and sworn testimony that, in her opinion, she timely paid her assessments and, therefore, was never in default. (DE #235, at 5&8). As the FDCPA does not define "default," the Court turns to the plain meaning of the word. According to Black's Law Dictionary, "default" is "the failure to pay a debt when due." BLACK'S LAW DICTIONARY (9th ed. 2009). Accordingly, the Court finds that where the record evidence reveals that a party did not pay assessments when due, those assessments are considered to be in default under the FDCPA. It is irrelevant for the purposes of the FDCPA that Defendant Windy Pointe did not designate the account in default under its bylaws.

Further, Defendant Paige's reliance on Plaintiff Abby's allegations that her account was not in default is misplaced, as at the summary judgment stage, a court must go beyond the allegations in the pleadings and look at the evidence in the record. *Celotex*,

477 U.S. at 324. Here, despite Plaintiff Abby's allegations and sworn testimony that she timely paid her assessments, the evidence in the record, namely the due date for payment of the monthly assessments, the date of Plaintiff Abby's checks, and Defendant Paige's own sworn testimony that Plaintiff Abby's assessments were past due, indicates that Plaintiff Abby consistently paid the monthly assessments after the designated due date. In addition, Defendant Windy Pointe assigned late payment fees to Plaintiff Abby's account and Defendant Paige sent letters to Plaintiff Abby to collect "past-due assessments," because her monthly assessments were in default. (DE #253-2; DE #253-3). Accordingly, the Court finds there to be sufficient evidence in the record to support a finding that Plaintiff Abby's monthly assessments were in default so as to qualify Defendant Paige as "debt collector" under the FDCPA.

In support of the second argument, Defendant Paige maintains in a sworn declaration that he obtained Plaintiff Abby's assessment account as soon as she bought her property, which was prior to any default. (Paige Decl. ¶ 10, DE #97-7). According to Defendant Windy Pointe's community association manager, however, Defendant Windy Pointe's management company did not refer Plaintiff Abby's assessment account to Defendant Paige for collection until September 2009, which was after Plaintiff Abby had paid her assessments late for the preceding six months. Specifically, it was not until September 2009 that Defendant Paige was authorized to contact Plaintiff Abby (as evidenced by a $50 charge added to the resident's account and an executed "Authorization to Proceed") regarding her assessment account or provided with "the resident transaction report or account history for the delinquent owner." (Walker Decl. ¶¶

10–11, DE #232-1). Accordingly, the Court finds there to be sufficient evidence in the record to support a finding that Defendant Paige did not obtain Plaintiff Abby's debt until her assessment account was in default, which qualifies Defendant Paige as "debt collector" under the FDCPA.

For the third argument, Defendant Paige argues he is outside the coverage of the FDCPA, because he was Defendant Windy Pointe's agent and attorney for a variety of matters aside from past-due assessment collection. (DE #235, at 11). As a matter of law, the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). Here, the record evidence demonstrates that it was Defendant Windy Pointe's regular procedure to refer delinquent assessment accounts to Defendant Paige for collection. (Walker Decl. ¶ 10, DE #232-1). Accordingly, the Court finds there to be sufficient evidence in the record to support a finding that Defendant Paige, as Defendant Windy Pointe's attorney, regularly engaged in debt-collection activity on behalf of Defendant Windy Pointe so as to qualify Defendant Paige as "debt collector" under the FDCPA.

Finally, the Court finds that Defendant Paige's fourth argument fails as a matter of law. As explained in this Court's earlier Order Denying Defendants' Motions to Dismiss (DE #27), association assessment fees, even in Florida, qualify as "debts" under the FDCPA.

### C. *There Are Disputed Facts with Regard to Count III for Slander of Title*

With regard to Plaintiff Abby's slander of title claim, Defendants maintain that Plaintiff Abby has failed to produce sufficient evidence in support of her claim. In doing

so, Defendants offer legal conclusions based on their own interpretations of the facts, e.g., whether or not the facts of the case demonstrate that Defendant Windy Pointe had the right to record the lien on Plaintiff Abby's property. Upon review of the record, the Court finds that Defendants have failed to meet their burden at the summary judgment stage "of pointing to the part of the record that shows the absence of a genuine issue of material fact." *See Adickes*, 398 U.S. at 157. Accordingly, the Court finds it must deny summary judgment on Count III for slander of title.

### IV. Conclusion

Accordingly, upon consideration of the record and being otherwise fully advised, it is **ORDERED, ADJUDGED, and DECREED** that Defendant Windy Pointe Homeowners Association, Inc.'s Motion for Summary Judgment (**DE #234**) and Defendant Robert Paige's Renewed and Supplemental Motion for Summary Judgment (**DE #235**) be, and the same are hereby, **DENIED**.

**DONE AND ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 18th day of July, 2012.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

**cc:**

**Counsel for Plaintiff**

       **Sina Negahbani**
       PO Box 566055
       Miami, FL 33256
       305-595-9078
       Fax: 305-595-9079
       Email: NegahbaniS@yahoo.com

**Counsel for Defendants**

       **Mark Blumstein**
       The Blumstein Law Firm
       One Turnberry Place
       Suite 302
       19495 Biscayne Boulevard
       Aventura, FL 33180
       786-514-1604
       Fax: 305-935-9710
       Email: mark@blumsteinlaw.com

       **Susan H. Aprill**
       Fowler White Burnett P.A.
       21st Floor
       100 Southeast Third Avenue
       Fort Lauderdale, FL 33394
       954-377-8100
       Fax: 954-377-8101
       Email: sa@fowler-white.com

       **Michael Lewis Elkins**
       Fowler White Burnett, P.A.
       1395 Brickell Avenue
       14th Floor
       Miami, FL 33131
       305-789-9213
       Fax: 305-728-7513
       Email: melkins@fowler-white.com