# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

## CASE NO. 10-23589-CIV-KING

FELICE ABBY,

     Plaintiff,

v.

ROBERT PAIGE, and
WINDY POINTE HOMEOWNERS
ASSOCIATION, INC.,

     Defendants.

_____/

## OPINION GRANTING IN PART SUMMARY JUDGMENT FOR PLAINTIFF ON COUNT I; GRANTING IN PART SUMMARY JUDGMENT FOR DEFENDANT PAIGE ON COUNTS II AND III; AND GRANTING SUMMARY JUDGMENT FOR DEFENDANT WINDY POINTE

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Summary Judgment as to Count I (DE #303) and Defendant Windy Pointe's Renewed Motion for Final Summary Judgment (DE #300), both filed October 1, 2012, and Defendant Paige's Renewed Motion for Summary Judgment as to All Counts (DE #304), filed October 2, 2012. The Court, being fully briefed on the matter,[1] finds that Plaintiff is entitled to judgment as a matter of law on Count I and that Defendants are entitled to judgment as a matter of law on Counts II and III. For the reasons discussed below, Plaintiff's Motion

---

[1] Defendant Paige filed two separate Responses to Plaintiff's Motion (DE #310; DE #311) on October 15, 2012. Defendant Windy Pointe filed its Response (DE #316) on October 22, 2012. Plaintiff's Reply (DE #324) to all three was filed November 9, 2012. (Neither Defendant filed a statement of disputed facts opposing Plaintiff's Statement of Undisputed Facts (DE #299).) Plaintiff filed a Response (DE #319) to Defendant Paige's Motion and a Response (DE #321) to Defendant Windy Pointe's Motion, both on October 30, 2012, to which Defendant Paige replied (DE #322) and Defendant Windy Pointe replied (DE #323) on November 9, 2012.

and Defendant Paige's Motion are granted in part and denied in part; Defendant Windy Pointe's Motion is granted.

## I. BACKGROUND

On October 6, 2010, Plaintiff Felice Abby ("Abby"), a homeowner in the Windy Point residential complex, filed a three-count Complaint against Defendant Windy Pointe Homeowners Association ("Windy Pointe") and Defendant Robert Paige ("Paige"), Windy Pointe's attorney. Abby's Complaint alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against Defendant Paige and violations of the Florida Consumer Collection Practices Act ('FCCPA"), FLA. STAT. § 559.55 *et seq.*, against Defendant Paige and Defendant Windy Pointe for unlawfully attempting to collect a debt from Abby. The Complaint also alleges slander of title against both Defendants based on the lien placed on Abby's property. The following facts are not in dispute.[2]

Abby resides in a home she owns in the Windy Point residential complex in Cutler Bay, Florida. As a member of the Windy Pointe Homeowner's Association, Abby is subject to the Declaration of Restrictions and Covenants for Windy Pointe ("Declaration"), as amended and restated, by virtue of her property ownership. Pursuant to the Declaration, monthly maintenance assessments are timely due and payable to Windy Pointe together with applicable interest, late fees, costs, and reasonable attorney's fees.

---

[2] Unless otherwise noted, these facts are taken from the instant briefings and exhibits filed thereto and from prior rulings of the Court, particularly the July 18, 2012 Order Denying Defendants' Motions for Summary Judgment (DE #287).

Payment is due on the first day of each month, though late fees and other costs are not applicable until the expiration of a grace period. The Declaration states that the grace period is "thirty (30) days (or such other period of time established by the Board) after the due date." (Declaration of Restrictions and Covenants, DE #13-2, p. 37). However, in her deposition, Tara Walker, the association's manager since at least 1999, stated that at some point before Abby purchased her property in 2000 the Board shortened the grace period to fifteen days. As of at least 2007, the payment coupons sent to Windy Pointe homeowners reflected a fifteen-day grace period. Abby sometimes did not pay the assessment by the fifteenth of each month. This was, at the very least, true for January 2007, October 2007, December 2007, April 2008, June 2008, and February 2009. Each time, a late fee was automatically added to Abby's account balance.

In September 2009, Windy Pointe engaged Paige to collect Abby's outstanding balance. Paige had been the association's attorney since the mid-1990s. His duties included supervising or assisting with Board elections and meetings; negotiating contracts; interpreting the Declaration and By-Laws; property management; enforcing rules and regulations; collecting rents; collecting overdue assessments; recording and foreclosing liens; and representing Windy Pointe in mortgage foreclosure litigation. During all times material to the above-styled action, about 90 percent of Paige's business involved representing sixty to eighty homeowners' associations. He did at least some collection work for the majority of these clients.

On October 6, 2009, Paige, acting on behalf of Windy Pointe, sent Abby a letter demanding $572.20 for the November 2009 assessment of $77.20, alleged "past due

maintenance and other charges," and $150.00 for attorney's fees. (DE #1-4). The letter stated that if Abby did not pay the full amount within 45 days, "the Association has instructed me to file a Lien against your property, which could result in the loss of your property if you continue to fail to make payment." (*Id.*). The letter did not identify Paige as a debt collector. On November 1, 2009, Abby submitted a check for $77.20, and Paige responded, on November 9, 2009, with a letter confirming receipt of the partial payment and demanding $500.00 no later than November 21. 2009. This "Part Payment Memo!", which also was sent on Windy Pointe's behalf, again did not identify Paige as a debt collector and repeated that Paige would record a lien against Abby's property if payment was not timely.

At that point, Abby communicated with her brother, Thomas Abinanti, Esq., regarding the monies claimed due. Abinanti is an attorney licensed to practice law in the state and federal courts of Connecticut and New York, as well as in the United States Court of Appeals for the Second Circuit. He is not licensed to practice in Florida.[3] But on November 20, 2009, Abinanti sent a letter to Paige in which he asked about the payment demands made to Abby. Paige responded, by fax, that Abby still owed $500.00 but that "Mr. Paige will deduct $100.00 from this total if she comes to our office with clear funds by 12 noon tomorrow." (DE #1-8). On November 24, 2009, after discussion with her brother, Abby issued a check for $400.00 to the Robert E. Paige Trust Account, writing

---

[3] Abinanti has not submitted any invoices or billing statements to Abby for legal services related to this matter, nor does Plaintiff dispute that she has not paid him.

the words "UNDER PROTEST" on the check. Three days later, on November 27, 2009, Abby also submitted a $77.20 check for the coming assessment.

Yet, two weeks later, on December 14, 2009, Abby received another letter from Paige on behalf of Windy Pointe, demanding $449.70 "for the total of the past due maintenance and other charges described on the enclosed statement (less $250.00 payment), the January $77.20 assessment, and a $150.000 attorneys fee." (DE #1-10). This letter, like the previous ones, indicated that Paige would place a lien against Abby's property if the amount was not paid within 45 days. (*Id.*). A copy was sent to "Thomas Abinanti, Esq." (*Id.*). The next day, on December 15, 2009, Abby received another letter from Paige, on behalf of Windy Pointe, confirming receipt of the November 27, 2009 check for $77.20 and demanding "payment in the amount of $372.50 by no later than January 29, 2009 [sic]." (DE #1-11). Again, Paige expressed that he would record a lien against Abby's property if payment was not timely.

Abby then filed a *pro se* state court action against Paige and Windy Pointe on January 28, 2010, seeking to recover the $400.00 she made on November 24, 2009. Abby's expenses for filing the state court action included a $124.25 filing fee and costs of $25.00, for a total of $149.25. The state court action did not stop Paige and Windy Pointe's efforts to collect from Abby.

On April 27, 2010, Paige sent Abby a letter, notifying her of a lien he had recorded against her property in the amount of $1,095.00, to include the $195.00 balance reflected on her Resident Transaction Report, $850.00 in attorney's fees, and $50.00 in costs. The letter demanded payment in the amount of $1,181.65, to include the $1,095.00,

along with the May 2010 assessment of $86.65. On June 5, 2010, Abby issued a check to the Robert E. Paige Trust Account in the amount of $1,095.00. This resulted in the removal of the lien on July 12, 2010. Abby again wrote the words "UNDER PROTEST" on the check she submitted to Paige. She subsequently voluntarily dismissed her state court action against Paige and Windy Pointe on October 15, 2010.

On October 6, 2010, Abby, through newly-retained local counsel, filed the above-styled action, alleging violations of the FDCPA against Defendant Paige (Count I) and violations of the FCCPA (Count II) and Slander of Title (Count III) against Defendant Paige and Defendant Windy Pointe. Over the following nearly two years, the parties engaged in protracted litigation and extremely contentious discovery. The docket now contains more than 300 entries, including several lengthy rulings.[4]

Significantly, on July 18, 2012, the Court denied Defendants' motions for summary judgment on all counts. (DE #287). In doing so, the Court determined that Abby's account balance qualifies as a "debt" under the FDCPA and FCCPA; the Court also found that Defendants did not meet their burden of pointing to a place in the record demonstrating the absence of a genuine issue of material fact on slander of title.

---

[4] Among other Orders, on May 2, 2012, the Court denied Plaintiff's motion for class certification of FDCPA violations because, after more than a year of discovery, Plaintiff could not demonstrate sufficient evidence to satisfy Federal Rule of Civil Procedure 23(a) requirements of numerocity, commonality, and typicality. (DE #261). On July 6, 2012, the Court denied Defendant Paige's motion to dismiss for lack of subject matter jurisdiction because though Plaintiff Abby had not responded to his April 29, 2011 Offer of Judgment, Paige's actions also did not comport with Rule 68. (DE #282). In particular, "[i]nstead of filing record of the Offer and moving to dismiss the case on the grounds of mootness, Defendant Paige continued to aggressively litigation the above-styled action, including engaging in unrelenting attempts to evade discovery, for almost a year before bringing the existence of the Offer to the Court's attention." (*Id.*).

At the July 6, 2012 Pretrial Conference, the parties agreed to sever their claims for attorneys' fees and costs from the trial on liability and damages, which was set for the two-week calendar commencing September 4. (DE #283). The trial, however, was cancelled following the August 30, 2012 Calendar Call because the parties ignored the Court's Order to file a joint pretrial stipulation (DE #271) and left unresolved a multitude of factual and legal issues. The Court ordered the parties to submit cross-motions for summary judgment based on the facts as developed in the record and the law as it pertains to the factual and legal issues developed by the Complaint, Answer, and prior rulings of the Court. (DE #297).[5]

The parties' motions are now ripe for adjudication.[6] Plaintiff seeks judgment against Defendant Paige on Count I (FDCPA) and "suggests" that the Court avoid adjudicating the Florida state law claims, Count II (FCCPA) and Count III (Slander of Title), so that Plaintiff can proceed with those claims in state court. Defendant Paige seeks judgment in his favor on all counts; Defendant Windy Point, who is not accused of violating the FDCPA, seeks judgment on Count II and Count III. The Court addresses each count in turn.

---

[5] The Court reserved ruling on Defendant Robert Paige's Motion in Limine Regarding Evidence Pertaining to Paige Law Group, PA (DE #238) and on Defendants' Joint Motion for Reconsideration of Motion Seeking Leave to Amend to Assert the Affirmative Defense of Voluntary Payment Doctrine (DE #255), should the parties choose to argue the issues in their cross-motions for summary judgment.

[6] The parties' unnecessarily confusing litigation strategies and disregard for the Local Rules continued with the instant briefings. For example, Defendant Paige filed his motion for summary judgment on October 2, one day late, and failed to include a statement of undisputed material facts as required; instead, he incorporated by reference "prior Statements of Undisputed Material Facts, DE 183 and DE 236, together with the Defendants' pre-trial Stipulation DE 267, and WINDY POINTE's Statements of Undisputed Material Facts found at DE 233 and filed October 1, 2012." (DE #304, p. 2). Rather than concisely presenting the Court with his statement of undisputed facts, as required by Local Rule 56.1, Defendant Paige told the Court to search the docket for five other entries and take it upon itself to sift through the duplicative material.

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24.

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact").

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of

evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

### III. Discussion

Plaintiff's Motion for Summary Judgment focuses entirely on Defendant Paige's alleged violations of the FDCPA. Plaintiff does not move for summary judgment on Counts II and III. Instead, Plaintiff suggests that those claims be set aside for Plaintiff to litigate in state court. Defendants, who have fought the state claims since this action was filed more than two years ago, vehemently oppose Plaintiff's request.

As a preliminary matter, the Court finds that continuing to exercise supplemental jurisdiction over Counts II and III is appropriate under 28 U.S.C. § 1367. The balance of factors do not warrant declining jurisdiction. *See* 28 U.S.C. § 1367(c); *see also Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994). The state law claims arise out of the same conduct as the FDCPA claim; they do not predominate the FDCPA claim; and they do not present novel or complex issues of state law. *See id.* Further, Plaintiff has presented no compelling reason that the Court should decline to exercise supplemental jurisdiction. Retaining these claims after two years of litigation promotes judicial economy and fairness to the parties, and is well within the Court's discretion. "Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction." *Osborn v. Haley*, 549 U.S. 225, 245 (2007). The Court will not now, with

Defendants' motions for summary judgment pending and the matters having been fully litigated, decline to adjudicate the claims solely because Plaintiff no longer thinks final judgment will benefit her. The Court now proceeds with each count in turn.

## A.  *Count I—FDCPA*

Congress passed the FDCPA to "eliminate abusive debt collection practices." 15 U.S.C. § 1692. The law "applies only to debt collectors and only when their conduct is undertaken 'in connection with the collection of any debt.'" *Neff v. Capital Acquisitions & Management Co.*, 352 F.3d 1118, 1121 (7th Cir. 2003) (citing 15 U.S.C. § 1692e). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).[7] The term "debt collector" includes "attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

Debt collectors are required to disclose in initial correspondence, whether written or oral, "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). This warning is sometimes referred to as the "mini-Miranda." *Chalik v. Wesport Recovery Corp.*, 677 F. Supp. 2d 1322, 1326 (S.D. Fla. 2009). Additionally, in connection with the collection of any debt, collectors are prohibited, *inter alia*, from communicating with a consumer

---

[7] The statute provides six exemptions, none of which is implicated by the facts of this case.

whom the collector knows to be represented by an attorney with respect to the debt, 15 U.S.C. § 1692c(a)(2), "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse," 15 U.S.C. § 1692d, falsely representing the amount of any debt, 15 U.S.C. § 1692e(2)(A), or using unfair or unconscionable means to collect or attempt to collect any debt, 15 U.S.C. § 1692f. "The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010).

To prevail on a FDCPA claim, the plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360–61 (S.D. Fla. 2000). In the above-styled action, Plaintiff alleges numerous violations of these provisions by Defendant Paige. The Court already has determined that the money sought from Plaintiff qualified as a debt under the law. *See* (DE #287). Thus, the Court now addresses whether Defendant Paige was acting as a debt collector and, if so, whether he violated any of the statute's provisions.

### i. Paige was a "Debt Collector" as Defined by the FDCPA

Defendant Paige has vehemently denied that he is a debt collector and, therefore, is not subject to the FDCPA. However, the Court looks beyond the parties' legal conclusions to the factual record. That record is replete with evidence that Defendant Paige satisfies the statute's definition of a debt collector. On at least four occasions when acting on behalf of Defendant Windy Pointe, Defendant Paige held himself out as a debt

collector. When notifying other homeowners of an action to foreclose the claim of a lien against their home, Paige included this language beneath his signature block:

> NOTE: PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT YOU ARE ADVISED THAT THIS LAW FIRM IS DEEMED TO BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

*See* (DE #299-25). Beyond Defendant Paige's self-identification, he also testified at his deposition that, during all times material, roughly 90 percent of his practice involved representing homeowners' associations and that he was engaged in collection activities for the majority of those clients. Debt collection was a regular part of Defendant Paige's practice. Thus, even though he was acting as an attorney, and even though his collection activities served as a precursor for, and eventually involved, litigation, Defendant Paige was subject to the FDCPA's requirements. *See Heintz*, 514 U.S. at 294–95.

### ii. Paige's Alleged Violations of the FDCPA

Plaintiff's Motion scatters shotgun allegations across the FDCPA. Some are argued in detailed and heavily supported by the factual record. Others simply are stated in conclusory fashion. Specifically, Plaintiff alleges that Defendant Paige: (1) engaged in collection activity the natural consequence of which was to harass, oppress, upset, or abuse Plaintiff; (2) falsely represented the character, amount, or legal status of a debt; (3) used unfair and unconscionable means to collect or attempt to collect a debt; (4) failed to provide the "mini-Miranda" warning; and (5) communicated directly with Plaintiff after knowing she had legal representation on the matter. In his Response, Defendant Paige ignores each alleged violation, except the "mini-Miranda" violation.

The Court begins with the first and third allegations, which are without merit. Plaintiff asserts these violations, of Sections 1692d and 1692f, without any factual support. Plaintiff merely states that because Defendant Paige claimed Plaintiff owed money for past due assessments, his conduct was unconscionable and bound to result in harassment or abuse of Plaintiff. In construing the record evidence in the light most favorable to Plaintiff, the Court finds no facts upon which a trier of fact could find that Defendant Paige violated these provisions. Accordingly, Defendant Paige is entitled to judgment as a matter of law on alleged violations of these provisions.

Plaintiff's second allegation poses a more complicated question. As a preliminary matter, it requires the Court to determine whether the homeowners' association shortened the grace period for late assessment payments from thirty days to fifteen days. Plaintiff has repeated throughout the course of this litigation that the association's Declaration provides for a thirty-day grace period and that anything to the contrary is in conflict with that document. Plaintiff's argument is perplexing and without factual support. As the Court notes above, the full text of the grace-period provision actually allows for "thirty (30) days (or such other period of time established by the Board) after the due date." And the record is heavy with evidence that the association made such a change at the very latest before late fees were added to Plaintiff's account. Of particular note is the undisputed testimony of the association's manager, Tara Walker, who testified that the Board adopted the shorter grace period before Plaintiff purchased her property in 2000, and the language on payment coupons since at least 2007 indicating a fifteen-day grace period. Plaintiff's speculations that the Board either never changed the grace period or,

alternatively, did so improperly are without any evidence in the record to sustain the Court's finding. *See Liberty Lobby*, 477 U.S. at 252 ("[T]here must be evidence on which the jury could reasonably find for the plaintiff."). Thus, Defendant Paige did not falsely represent the nature of Plaintiff's debt to the extent that Defendant Paige sought to collect only what Plaintiff owed, based on a late fee being added after a fifteen-day grace period and all other fees identified in the Declaration.

However, the record demonstrates two instances in which Defendant Paige dunned Plaintiff for more than she owed. First, on November 9, 2009, Defendant Paige sent Plaintiff a partial payment memo acknowledging the $77.20 check she had sent in response to Defendant Paige's initial communication demanding $572.20. The balance on Plaintiff's account should have been $495.00. Yet, in his correspondence Defendant Paige demanded $500.00 no later than November 21, 2009. Second, on November 23, 2009, after Plaintiff failed to pay the $500.00, Defendant Paige communicated to Plaintiff's brother, acting as her attorney, that he would deduct $100.00 from Plaintiff's account balance if she brought "clear funds by 12 noon tomorrow." Plaintiff issued a check to Defendant Paige, which he cashed. Yet, two weeks later, Defendant Paige dunned Plaintiff for another $449.70. It does not take a forensic accountant to identify the deficiencies in Defendant Paige's calculations of Plaintiff's account balance. On one occasion, he demanded $5 more than he could seek to collect; on the other, he demanded $449.70 more.

Both of these actions constitute false or deceptive debt collection practices under this Circuit's "least sophisticated consumer" test, *Jeter v. Credit Bureau, Inc.*, 760 F.2d

1168, 1175 (11th Cir. 1985), because the misrepresentations of money owed and the language used by Defendant Paige would likely mislead the least sophisticated consumer. It is irrelevant whether Plaintiff actually was misled. It also is irrelevant whether Defendant Paige intended to mislead her. *See Randolph v. IMBS Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("Although § 1692c(a)(2) [communicating with a consumer represented by an attorney] . . . makes liability depend on the actor's knowledge, § 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period."). Accordingly, and because Defendant Paige has not identified a genuine dispute over a material issue of fact in regards to either, Plaintiff is entitled to summary judgment against Defendant Paige for two violations of 15 U.S.C. § 1692e(2)(A).

Turning now to Plaintiff's fourth allegation, the Court notes that Defendant Paige admits having violated the FDCPA's "mini-Miranda" warning requirement. *See* (Def. Paige Resp., DE #311, p. 4). The factual record supports Defendant Paige's admission. The entirety of Defendant Paige's initial communication to Plaintiff stated:

> Dear Ms. Abby:
>
> I have been retained by the Windy Pointe Homeowners Association to collect from you the sum of $572.20, for the total of the past due maintenance and other charges described on the enclosed statement, the November $77.20 assessment, and a $150.00 attorneys fee.
>
> Please send your check in the above amount payable to "Robert E. Paige Trust Account" to my address indicated above. Please put your account number on your check. If I do not receive your payment within 45 days of this letter, the Association has instructed me to file a Lien against your property, which could result in the loss of your property if you continue to fail to make payment. Also, the amount necessary to clear your past-due account (and release the Lien) will increase due to additional attorneys fees

and related costs. Assessments continue to accrue, together with attorneys fees and costs.

Very truly yours,
Robert E. Paige

*See* (DE #1-4). The letter included Defendant Paige's law firm letterhead, but it did not contain the notice discussed above in Part III.A.i nor did it identify Defendant Paige as a debt collector, as required by the FDCPA for initial communications between debt collector and consumer. Thus, Plaintiff is entitled to summary judgment against Defendant Paige for violating 15 U.S.C. § 1692g.

Finally, regarding the fifth allegation, the factual record leaves no question that Defendant Paige continued to communicate directly with Plaintiff after learning that Plaintiff was represented by legal counsel on the matter of her debt, in violation of 15 U.S.C. § 1692c(a)(2). Defendant Paige's December 14, 2009 letter dunning Plaintiff for $449.70 was sent directly to Plaintiff; a copy also was sent to Plaintiff's attorney, Abinanti. On December 15, 2009, Plaintiff received another communication from Defendant Paige about her account balance; Plaintiff's attorney was not copied on this letter. And on April 27, 2010, Defendant Paige sent Plaintiff a letter notifying her of a lien he had recorded against her property in the amount of $1,095.00 and demanding $1,181.65, to include the $1,095.00 and her May 2010 assessment of $86.65; Plaintiff's attorney again was not copied on the letter. These facts are not in dispute. Accordingly, Plaintiff is entitled to judgment against Defendant Paige for three violations of 15 U.S.C. § 1692c(a)(2).

In sum, Plaintiff is entitled to summary judgment against Defendant Paige on Count I based on six violations of the FDCPA.

### iii. Damages Under FDCPA

The FDCPA authorizes recovery of both compensatory damages and "additional damages" not exceeding $1,000 for an individual plaintiff. 15 U.S.C. § 1692k.[8] Compensatory damages, designed to return the plaintiff to their position before the violation, are measured by actual loss. *McMillian v. F.D.I.C.*, 81 F.3d 1041, 1055 (11th Cir. 1996). The amount of additional statutory damages is based on a balancing of factors, including "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). "For *de minimis* or technical violations, some courts refuse to award statutory damages." *Lester E. Cox Medical Center, Springfield, Mo. v. Huntsman*, 408 F.3d 989, 994 (8th Cir. 2005). Whether to award statutory damages and "the size of any such award is committed to the sound discretion of the district court." *Clomon v. Jackson*, 988 F.2d 1314, 1322 (2d Cir. 1993).

Here, Plaintiff seeks to recover damages of $2,619.25. That total includes the $400 payment to Defendant Paige in November 2009, the $1,095 payment to Defendant Paige to have the lien removed in June 2010, $149.25 related to expenses for filing the state court action, and $1,000 for "additional damages" under 15 U.S.C. § 1692k(a)(2)(A).

---

[8] A prevailing plaintiff also may seek reasonable attorneys' fees from the debt collector. 15 U.S.C. § 1692k(a)(3). The Court previously severed out the issue of fees and costs to be determined following judgment on liability and damages. *See* (DE #283).

Defendant Paige seeks to avoid liability by invoking Florida's voluntary payment doctrine. *See New York Life Ins. Co. v. Lecks*, 122 Fla. 127 (1935). The doctrine prevents an individual from recovering payments voluntarily made on a matter known at the time to be in dispute, "even though the claim thus paid was illegal." *Sanchez v. Time Warner, Inc.*, No. 98–211–CIV–T–26A, 1998 WL 834345, at *2 (M.D. Fla. Nov. 4, 1998). "It does not matter that the payment may have been made upon a mistaken belief as to the enforceability of the demand, or liability under the law, as long as payment is made with knowledge of the factual circumstances." *Hassen v. Mediaone of Greater Florida, Inc.*, 751 So. 2d 1289 (Fla. Dist Ct. App. 2000).

However, the voluntary payment doctrine does not have the effect of precluding FDCPA claims. *Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 895 (S.D. Ohio 2003). "The FDCPA is a federal law and accordingly state law defenses are not relevant here." *Hamid v. Stock & Grimes,* LLP, No. 11-2349, 2012 WL 2740869, at *2, --- F. Supp. 2d --- (E.D. Pa. 2012). Moreover, because the FDCPA permits a plaintiff to recover for violations of the law even when he defaulted on a debt, "[i]t follows that debtors may recover the amount paid to settle a debt" if the debt collector violated the FDCPA in connection with collecting that debt. *Id.* at *2.

Here, Plaintiff seeks to recover two payments she made to settle a disputed debt: one for $400, the other for $1,095. Regardless of whether Plaintiff owed these amounts, Defendant Paige violated the FDCPA in connection with both of these collections. Thus, the Court finds that Plaintiff is entitled to recover $1,495 in actual damages. However,

Plaintiff shall not recover the fees and expenses of filing the state court action that she then voluntarily dismissed.

Also, the Court awards Plaintiff the maximum "additional damages" of $1,000. Defendant Paige violated three provisions of the FDCPA on six occasions. One or even two of these violations could have been *de minimis* on their own, but not in the aggregate—and certainly not Defendant Paige's attempt to collect $449.70 from Plaintiff after receiving the funds that he had told her would clear her account nor his repeated direct communications with Plaintiff after learning she was represented by an attorney. The Court is well within its discretionary power to award Plaintiff the full statutory damages amount of $1,000. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1620 (2010). It finds such an award appropriate on these facts.

### B. *Count II—FCCPA*

The FCCPA is Florida's counterpart to the FDCPA. It provides additional protections and is preempted to the extent that it conflicts with the FDCPA. Both statutes define "debt" in exactly the same manner. FLA. STAT. § 559.55(1); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1187 n.2 (11th Cir. 2010). Unlike the FDCPA, the FCCPA applies to anyone attempting to collect a debt, not just those defined as "debt collectors." However, the FCCPA narrows liability by adding a requirement for knowledge of falsity as to claims made. FLA. STAT. § 559.72(9); *see also McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008) ("Plaintiff must prove, as part of the prima facie case alleging a violation of the FCCPA, that Defendants had *actual knowledge* that their claim of a right to enforce the debt" does not exist.). Any person

who violates the FCCPA is liable for actual damages and up to $1,000 in additional damages, if the court allows, unless "the violation was not intentional and resulted from a bona fide error." FLA. STAT. § 559.77(2)-(3). Unlike the FDCPA, the FCCPA permits awarding punitive damages. *Id.*

However, the Court need not address whether Defendant Paige or Defendant Windy Pointe violated the FCCPA because Plaintiff is barred on two bases from recovering damages under the statute.

First, Plaintiff already recovered said damages under Count I. Logically, Plaintiff can only be compensated once for actual damages; Florida law recognizes this and prohibits double recovery. *See Atl. Coast Line R. Co. v. Saffold,* 130 Fla. 598, 602 (1938) ("Double damages are not legally recoverable."). Moreover, the Court does not find that a second award of "additional damages," in this instance under the FCCPA, is warranted.

Second, and more significantly, Defendants have an affirmative defense to any liability under Florida's voluntary payment doctrine. Though the doctrine does not bar recovery under the FDCPA, it does preclude recovery under Florida's counterpart, the FCCPA. At the time Plaintiff made her payments to Defendant Paige, she knew they pertained to a matter in dispute. Indeed, Plaintiff wrote the words "UNDER PROTEST" on both checks. That Plaintiff protested making the payment is not sufficient to render her payment involuntary. *See Sundance Apartments I, Inc. v. General Elec. Capital Corp.*, 581 F. Supp. 2d 1215, 1224 (S.D. Fla. 2008). Neither is the fact that Defendant Paige repeatedly threatened Plaintiff with placing a lien on her property. "[P]ayment should ordinarily be deemed voluntary unless the circumstances present some constraint

or compulsion of such a degree as to impose a necessity of payment sufficient to overcome the mind and will of a person of ordinary firmness." *Hassen*, 751 So. 2d at 1290. Nothing in the record suggests that Defendant Paige exerted such a degree of mental manipulation. Thus, Plaintiff's recovery of these damages is barred by the voluntary payment doctrine.

Regarding the remaining $149.25 expense for filing the state court action, Plaintiff voluntarily dismissed the case and, therefore, the Court finds no basis for awarding her reimbursement of those fees. Accordingly, Plaintiff is not entitled to actual damages for Defendant Paige's violations of the FCCPA.

Without actual or even nominal damages, the Court cannot award punitive damages under Count II.[9] Even if the Court could, it would not here because "an award of punitive damages is only appropriate when a defendant's conduct rises above the standard of willfulness, to the level of malicious intent." *Simmons v. Washington Mutual Finance, Inc.*, No. 8:06-CV-01613-JDW-TBM, 2007 WL 641101, at *2 (M.D. Fla. Feb. 26, 2007) (citing *Story v. J.M. Fields, Inc.*, 343 So. 2d 675, 677 (Fla. Dist. Ct. App. 1977)). After two years of litigation, Plaintiff has uncovered no facts of such intent. Accordingly, the Court can afford Plaintiff no relief under Count II and Defendants are entitled to summary judgment.

---

[9] Indeed, Plaintiff's Response to Defendant Paige's Motion indicates that "Plaintiff is amenable to forgo same should the Court enter judgment against the Defendants for her actual and statutory damages." (Pl. Resp., DE #319, p. 4). The Court has already done so in relation to Defendant Paige's violations of the FDCPA.

### C. *Count III—Slander of Title*

Finally, the Court turns to Plaintiff's claim for damages that are the "direct and proximate result of the inappropriate, exaggerated, improper, bad faith, false, and/or fraudulent lien placed upon Plaintiff's home." (DE #1, p. 16). Slander of title is more commonly labeled as a disparagement action under Florida law. "In a disparagement action the plaintiff must allege and prove the following elements: (1) A falsehood (2) has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood." *Bothman v. Harrington*, 458 So. 2d 1163, 1168 (Fla. Dist. Ct. App. 1984); *Gates v. Utsey*, 177 So. 2d 486, 488 (Fla. Dist. Ct. App. 1965). Plaintiff "must specifically plead special damages." *Continental Development Corp. of Florida v. Duval Title & Abstract Co.*, 356 So. 2d 925, 927 (Fla. Dist. Ct. App. 1978).

Plaintiff cannot prove these elements. Leaving aside whether the size of the lien Defendant Paige placed on Plaintiff's property accurately reflected her debt, Plaintiff, at the very least, has provided no facts upon which the Court could find that Plaintiff proximately suffered any special damages therefrom. Plaintiff pleads special damages related to costs in challenging or removing the lien, and for her physical and emotional suffering. However, Plaintiff has no evidence of emotional or physical harm, and she is not entitled to damages for the cost of challenging or removing the lien. The fees she

spent to commence the state court action were incurred prior to the recording of the lien and thus could not possibly be the "foreseeable and normal consequences" of the subsequently recorded lien. *Bothman*, 458 So. 2d at 1170. And, under Plaintiff's FDCPA claim, she already has been awarded the amount she paid Defendant Paige to have the lien removed; alternatively, recovery of that payment under a slander of title action also is barred by the voluntary payment doctrine.

## IV. CONCLUSION

Accordingly, it is **ORDERED**, **ADJUDGED**, and **DECREED** that Plaintiff's Motion for Summary Judgment as to Count I (DE #303) is hereby **GRANTED in part**. Plaintiff is awarded damages of $2,495.00. The Motion is **DENIED** as to remanding to state court Counts II and III. It is further **ORDERED**, **ADJUDGED**, and **DECREED** that Defendant Windy Pointe's Renewed Motion for Final Summary Judgment (**DE #300**) is hereby **GRANTED**, and Defendant Paige's Renewed Motion for Summary Judgment as to All Counts (**DE #304**) is hereby **GRANTED in part**. Judgment is entered against Plaintiff as to Count II and Count III. The severed issue of attorneys' fees and costs, *see* (DE #283), shall be referred to the magistrate judge by separate order.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 11th day of January, 2013.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

**Cc:**

*Counsel for Plaintiff*

**Sina Negahbani**
PO Box 566055
Miami, FL 33256
Email: NegahbaniS@yahoo.com

*Counsel for Defendants*

**Robert E. Paige,** *pro se*
Paige Law Group, P.A.
9500 S. Dadeland Blvd., Suite 550
Miami, FL 33156

**Susan H. Aprill**
Fowler White Burnett P.A.
21st Floor
100 Southeast Third Avenue
Fort Lauderdale, FL 33394
Email: sa@fowler-white.com

**Michael Lewis Elkins**
Bryant, Miller, Olive P.A.
1 SE 3rd Avenue
Suite 2200
Miami, FL 33131
Email: melkins@bmolaw.com